**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 2:09-CV-314 JVB |
| | ) | |
| Appellant, | ) | Judge Joseph S. Van Bokkelen |
| | ) | |
| v. | ) | Appeal from the United States Bankruptcy |
| | ) | Court for the Northern District of Indiana, |
| JUDITH K ROGAN, | ) | No. 08 B 23221, |
| | ) | |
| Appellee. | ) | J. Philip Klingeberger, Bankruptcy Judge |

**OPINION AND ORDER**

The United States Government has appealed the bankruptcy court's July 24, 2009, final order. For the reasons explained below, the Court affirms the bankruptcy court.

**A. Facts and Proceedings in Bankruptcy Court**

The Debtor, Judith Rogan, is the wife of Peter Rogan who has two money judgments against him in the Northern District of Illinois: a $64,259,032 judgment in favor of the Government, and a judgment of about $124 million in favor of Dexia Credit Local. On November 6, 2006, the Government recorded an abstract of judgment in Cook County, Illinois, against one of the Debtor's scheduled assets, a condominium at 55 E. Erie in Chicago. The abstract of judgment identified the Debtor as a nominee of Peter Rogan. In addition, on July 12, 2007, the Government recorded an abstract of judgment in Porter County, Indiana, against another of Debtor's scheduled assets, the property located at 476 Wexford, Valparaiso, Indiana. This abstract, too, identified Debtor as a nominee of Peter Rogan. During the pendency of the action, the Wexford property was sold and the proceeds from the sale were deposited in an

escrow account.

On November 12, 2007, the Government filed a complaint in Northern District of Illinois to foreclose its judicial liens against the Erie and Wexford properties (*United States v. Judith Rogan*, 07 C 6398 (N.D. Ill)). Although both properties were titled to Debtor's revocable trust, the Government asserted that Peter Rogan was the real owner of both properties. In addition, in 2008, the Government sued Debtor in Northern District of Illinois to avoid allegedly fraudulent transfers in the amount of $5,500,000 from Peter Rogan to Debtor (*United States v. Peter Rogan*, 02 C 331 N.D. Ill)).

On September 24, 2008, in post-judgment supplementary proceedings, Dexia obtained a preliminary injunction order that froze assets held in the name of Peter Rogan, the Debtor, her children, and multiple trusts of which they and Peter Rogan were beneficiaries (*Dexia v. Peter Rogan*, 02 C 8288 (N.D. Ill)). The Government appeared in the Dexia injunction proceedings to assert and protect its interests.

Four days later, on September 28, 2008, Debtor filed for Chapter 13 bankruptcy. Among the scheduled assets, Debtor included the Erie property, bank accounts in Canada containing over $540,000, interests in various investment accounts, and the $912,000 proceeds of sale of the Wexford property in the escrow account.

On December 12, 2008, the Government moved for relief from the automatic stay. The Government, joining in Dexia's previously filed lift-stay motion, requested that the stay be modified to allowed continued litigation in the foreclosure suit, the fraudulent transfer action, and the Dexia injunction proceedings as to Debtor. On December 16, the bankruptcy court held a preliminary hearing on the motions to lift the stay and set out a briefing schedule. On January 27,

2009, the bankruptcy court held a pretrial conference setting February 18, 2009, as the date for the final hearing on the motions. On February 12, 2009, the bankruptcy court rescheduled the final hearing regarding the motions to stay from for February 20.

On June 1, 2009, the Government presented an argument to the bankruptcy court that the automatic stay had expired by operation of 11 U.S.C. § 362(e) because the bankruptcy court had not issued its decision within sixty days of the Government's motion.[1] The Government contended that it had not agreed to the extension of the statutory sixty-day period and the bankruptcy court did not on its own find that good cause required an extension.

That same day, the bankruptcy court issued an order addressing the Government's contention that the automatic stay had expired on its own accord. The bankruptcy court concluded that all parties had consented to holding the final hearing regarding the motions to lift the stay outside the sixty-day period, on February 20, 2009. Moreover, having consented to this extension, the parties entered into an agreement that "put no end date on the court's determination, which the court has endeavored to make as promptly as it could given its caseload, and given the complexity and relative novelty of the issues presented by the § 362(d) motions." (Bankr. Ct. July 15, 2009, Order at 3.) On July 24, 2009, the bankruptcy court entered

---

[1] Section 362(e)(2) states that automatic stays terminate sixty days after a motion to lift the stay, unless a decision is issued before then, the parties agree to an extension of time, or the bankruptcy court finds good cause for delaying the issuance of the decision:
>    Notwithstanding paragraph (1), in a case under chapter 7, 11, or 13 in which the debtor is an individual, the stay under subsection (a) shall terminate on the date that is 60 days after a request is made by a party in interest under subsection (d), unless—
>        (A) a final decision is rendered by the court during the 60-day period beginning on the date of the request; or
>        (B) such 60-day period is extended—
>        (I) by agreement of all parties in interest; or
>        (ii) by the court for such specific period of time as the court finds is required for good cause, as described in findings made by the court.

its decision, denying Dexia's and the Government's motions to lift the stay.

## B. Issues for Appeal

The United States appealed the bankruptcy court's denial of its motion to lift the stay. Its argument is twofold: the Government maintains that the bankruptcy court incorrectly ruled that the stay had not expired by virtue of § 362(e)(2) and that the bankruptcy court erred in denying its motion to lift the stay on the merits.

The Debtor argues that the Government lacks standing to pursue this appeal. She contends that the Government's motion before the bankruptcy court was merely a motion to join Dexia's motion to lift the stay, which, according to the Debtor, was denied by the bankruptcy court. Thus she argues that the Government is appealing an issue that was not before the bankruptcy court—the merits of lifting stay—rather than the bankruptcy court's denial of its motion to join in Dexia's motion. In addition, the Debtor defends the bankruptcy court's finding that lifting of the stay was unwarranted and that the parties had consented to the issuance of the lift-stay order months after the original deadline.

## C. Government's Standing

If the Debtor's argument about the Government's standing seems convoluted, it is because it is. The Debtor bases her argument on the title of the Government's December 12, 2008, motion—Motion to Join Dexia's Motion to Modify Stay—and completely ignores the substance of the motion itself. While ideally motion titles should inform the court about what is requested, courts look at the substance, not the title. *See Miller v. Transamerican Press, Inc.*, 709

4

F.2d 524, 527 (7th Cir. 1983) ("The court will construe [the motion], however styled, to be the type proper for the relief requested."). Despite its somewhat misleading title, the Government's motion deals with lifting the automatic stay, and the bankruptcy court recognized the motion as such. *See* July 15, 2009, Order at 1 n.1 ("The Court has generously construed the Government's 'joinder' in Dexia's motion as a separate motion on behalf of the United States."); *see also* July 23, 2009, Order at 1 ("In their respective motions, Dexia and the United States seek relief from the automatic stay of 11 U.S.C. § 362(a) so that they can pursue actions against the Chapter 13 debtor . . . which were pending against her in the United States District Court for the Northern District of Illinois at the time that she filed her petition initiating this Chapter 13 case on September 27, 2008."). This Court, too, recognizes that the Government's December 12, 2010, motion was a motion to lift the stay, the denial of which the Government is appealing.

**D. 11 U.S.C. § 362(e)(2)**

As noted above, the statute provides that automatic stays terminate sixty days after a motion to lift the stay, unless a decision is issued before then, the parties agree to an extension of time, or the bankruptcy court finds good cause for delaying the issuance of the decision:

> Notwithstanding paragraph (1), in a case under chapter 7, 11, or 13 in which the debtor is an individual, the stay under subsection (a) shall terminate on the date that is 60 days after a request is made by a party in interest under subsection (d), unless—
> (A)  a final decision is rendered by the court during the 60-day period beginning on the date of the request; or
> (B)  such 60-day period is extended—
>   (I)  by agreement of all parties in interest; or
>   (ii)  by the court for such specific period of time as the court finds is required for good cause, as described in findings made by the court.

11 U.S.C. § 362(e)(2).

The Government argues that the automatic stay expired on its own accord because the bankruptcy court did not have the parties' explicit agreement to delay the issuance of its order until July 24, 2009, and because it did not separately make findings consistent with § 362(e)(2)(B)(ii). In particular, the Government claims that because it did not explicitly consent to extending the sixty-day time period, the bankruptcy court had only until February 10, 2009 (the sixtieth day after the Government's motion to stay had been filed), to issue its decision.

The Court disagrees. On December 16, 2008, four days after the Government's motion, the bankruptcy court held a preliminary hearing. It memorialized the hearing on December 23, setting forth the schedule for determining the motions to lift the stay. On January 27, 2009, the bankruptcy court held a pretrial conference setting the final hearing on the motions for February 18. This schedule was memorialized in the bankruptcy court's February 9, 2009, Order. Although the February 18 date fell outside the sixty-day window, there is no indication that the Government objected holding the hearing on that date, which was beyond the sixty days provided in the statute. Moreover, when during another pretrial hearing on February 12, the bankruptcy court moved the hearing by two days from February 18 to February 20, the Government again expressed no objection to the delay. This Court defers to the bankruptcy court's account in its July 15, 2009, Order that this last and all previous orders delaying the evidentiary hearing were entered "with the consent of the parties to every provision stated in it, including the consent of the [Government]." July 15, 2009, Order at 2. The absence of the Government's objections further attests to the Government's concurrence.

Since the Government agreed to hold the final hearing outside the sixty-day period, it

6

follows that the Government consented to the final decision being issued outside of the sixty-day period as well. Thus the question before this Court is whether the Government's consent extended until July 24, 2009. Here, too, the Court defers to the bankruptcy court. Having held numerous hearings with the parties, the bankruptcy court was in the best position to assess the nature of the agreement. Moreover, as the bankruptcy court's twenty-nine-page opinion and the parties' oversized briefs on appeal attest, the relatively novel matter before the bankruptcy court required prolonged consideration.[2] Under these circumstances, therefore, it may be inferred that the Government's consent extended for several months. In fact, the Government did not invoke § 362(e)(2) until June 1, 2009, more than one hundred days after the hearing. In conclusion, the Court finds that the bankruptcy court's delay until July 24, 2009, did not trigger the application of § 362(e)(2).

**E. Bankruptcy Court's Denial of Government's Motion to Lift the Stay**

The Court reviews the bankruptcy court's denial of the Government's motion to lift the stay under 11 U.S.C. § 3362(d) for abuse of discretion. *In re Williams*, 144 F.3d 544, 546 (7th Cir. 1998) (citing *In re C & S Grain Co.*, 47 F.3d 233, 237–38 (7th Cir. 1995). A bankruptcy court abuses its discretion when "its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004). Also, the bankruptcy court's finding of fact shall not be set aside on appeal unless clearly erroneous, and

---

[2]In fact, after filing this appeal, the Government asked for extension of time to file its opening brief because "[t]he issues raised in this appeal are numerous and complex so that an adequate brief cannot reasonably be prepared by the date the brief is due." (DE 2 at 1.)

due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses. *See* Fed. R. Bankr. P. 8013. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake had been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

In the bankruptcy court, the Government sought to lift the automatic stay with respect to the Northern District of Illinois cases where it is seeking to foreclose its judicial liens against the Erie and Wexford properties and to avoid allegedly fraudulent transfers in the amount of $5,500,000 from Peter Rogan to the Debtor. The stay is in effect because the Debtor listed the properties and accounts in question in the Northern District of Illinois cases among the scheduled assets. The bankruptcy court applied the test from *International Business Machines v. Fernstrom Storage & Van Co.*, 938 F.2d 731 (7th Cir. 1991)[3] and found that the Government has failed to establish "cause" under 11 U.S.C. § 362(d)(1)[4] with respect to its request to lift the automatic stay. Under the first prong of the test, the bankruptcy court found that the bankruptcy estate or the Debtor, or both, would suffer prejudice if the civil cases were allowed to continue during the pendency of the bankruptcy:

---

[3]The Court of Appeals for the Seventh Circuit used a three factor test to determine whether to grant a litigant relief from an automatic stay. The questions to be asked are whether:
    a)    Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,
    b)    the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and
    c)    the creditor has a probability of prevailing on the merits.
*Fernstrom*, 938 F.2d at 735.

[4]Title 11 U.S.C. § 362(d)(1) provides:
On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

> The court, unlike district court, has particularized expertise in the bankruptcy arena with respect to concepts of law which may or may not apply under applicable precedents to determine issues relating to the imposition of constructive trusts or similar remedies, and the potential utilization of § 544 or other avoidance powers. This court, unlike the district courts, is statutorily imbued with the responsibility for balancing the interests of all creditors and parties-in-interest whose claims may be affected by a determination of property interests. Given the issues that foreseeably will arise with respect to the matters asserted by Dexia and the United States, this court is quite comfortable in determining that significant prejudice may arise to the interests of the estate and/or the debtor if the assertions of Dexia and the United States are determined in a non-bankruptcy forum.

(July 24, 2009, Order at 26–27.)

As for the second prong, whether the litigation in Hammond is more burdensome to the Government than litigation in Chicago, the bankruptcy court found no considerable hardship for the Government, thus finding no compelling reason to lift the stay on the basis of hardship. Likewise, the bankruptcy court found no disadvantage for the Government in the fact that the litigation in Illinois had been ongoing for some time and that the judges there may be more familiar case. Rather, the bankruptcy court expressed its ability to familiarize itself with the existing records. (*Id.* at 27–28.)

As for the final factor, whether the Government has a probability of prevailing on the merits, the bankruptcy court sided with the Government but concluded that the claims can be as easily settled "in the bankruptcy court by means of an adversary proceeding under Fed. R. Bankr. P. 7001(1), (2), (7) and/or (9) as it can by proceeding with the presently pending actions in the Northern District of Illinois." (*Id.* at 29.)

This Court does not find that the bankruptcy court abused its discretion by refusing to lift the automatic stay. The bankruptcy court correctly found that the proceedings which the Government seeks to pursue have significant ramifications for the property of the Debtor's

9

Chapter 13 bankruptcy estate and thus significant ramifications for the landscape of any Chapter 13 plan for which the Debtor may seek confirmation. This is not a typical motion to lift the stay, where relief is requested in a civil action in which a plaintiff is attempting to recover from the debtor's insurer; rather, the Debtor's other creditors are in direct competition with the Government and their interests must be safeguarded. Insofar as the Debtor listed the properties and accounts in the schedule, it will be up to the bankruptcy court to determine her interests in these assets. The bankruptcy court was rightfully reluctant to relinquish its jurisdiction. Finding no abuse of discretion, the Court affirms the decision of the bankruptcy court.

**F. Conclusion**

The Court affirms the bankruptcy court's July 24, Order, regarding the Government's motion to lift stay in all respects.

Dated: September 30, 2010

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE